Good afternoon. Alex Darcy for DZ Bank. You may recall this case is the case for non-dischargeability by the bank against debtors by the name of the Meyers. And had the Meyers simply transferred their stock in Meyer Insurance, DZ Bank would have prevailed under the logic that the Bankruptcy Court and the District Court use. But since the Meyers instead use their position as officers in the company to transfer the underlying assets of their closely held corporation, we lose because we don't, according to the lower courts, have a claim against Meyer Insurance. This is an issue of first impression under the WFTA, which was the underlying statute that we proceeded with to sue for non- dischargeability under Section 523A2A of the Bankruptcy Code. We provided the court with several decisions that go in our direction. And those courts, what they do is they focus on that language in Cantrell that was actually drafted by the Oklahoma Supreme Court, which says that fraud is a generic term which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud and includes all surprise, trick, cunning, dissembling, and any unfair way by which another is need that? No, I don't think we do. Doesn't Husky say that fraudulent conveyance doesn't require affirmative fraudulent behavior? Oh, absolutely. I think that issue is completely settled. I think the only issue that the other side is likely to remain is whether we can still pursue this because do we have a claim against Meyer Insurance? And the cases that go our way say they do, and Husky certainly implies that we would because remember in Husky the defendant there was the 30% shareholder of the corporation and he took it upon himself to dissipate the assets of that corporation and the court did find his claim non-dischargeable. So in our view it absolutely resolves the opinion, but I think the reason you don't want to make a hard line rule is because of the nature of fraud. And I think if you look at 105 of the Bankruptcy Code which says that bankruptcy is generally a court of equity, if you look at all the totality of the circumstances here, I mean the people least deserving of a new start are the Meyers. I mean I don't know if you followed all of the fraud, but the bank was actually the good guy in this transaction. They were giving them a significant discount with these forbearance agreements and while the forbearance agreements were going on, all the time the Meyers were misleading the bank about the source of the funds. The choice insurance was already gone. They didn't have any assets. Those assets have been conveyed away by the end of some years before, between 2008 and 2011, but they were giving the impression that choice was still in business. If you picked up on this, but the way Mr. Meyer handles his income is because he worked hard for his business. Whenever he works hard for his business, his business generates a debt to him and that debt gets paid off by the money that his business generates as revenue, so he never actually pays any income tax. So all this is going on and then we create, he even goes to the trouble of legal counsel and amazingly they did waive privilege on this and I can't tell you why, but the attorney did testify at trial saying that his recommendation was that they could place fully encumbered personal assets like their home that didn't have any equity in the trust, but they couldn't place unencumbered business assets in the trust and so what do they do? They go out and they put all the unencumbered business assets in the trust. So these people are least deserving of your sympathy. The trial court's rationale affirmed by the district court creates an engine for fraud. It creates a roadmap for debtors to take advantage of their creditors and I think if it looks like a duck and it cracks like a duck and it's fraud, then why not take the other approach, the cases that we've cited which focus on the nature of the transfer. Which Washington Supreme Court cases or Washington Court of Appeal cases might support your position? I don't know that there's actually a WFDA case anywhere that addresses, other than in broad sense that you want to look carefully at fraudulent conveyance, but there's nothing that goes as far as this. That's why it's a question of first impression, I believe. Do you think the issue merits certification to the Washington Supreme Court? I'd prefer that you don't. I think the Supreme Court is giving you some cover in Husky. Do you think Husky is enough? Yes, I do. I do. Because Husky is founded on the Texas Uniform Fraudulent Transfer Act and it is a uniform statute and we did cite cases to Washington that point out that the UFTA is a uniform statute and we're looking for uniform treatment across the board. And then certainly I think both the Minnesota case, the State Court case, and the South Dakota bankruptcy case provide compelling rationales for why you want to do that. And then there was one remaining issue, was whether we had to have a security interest in those assets. Remember, we're not talking about the 123-200 that we already have, the 261. And there's, I want to say Palmer, that's the wrong case. It's the case from the Northern District of Ohio. Perry, I'm sorry. Perry, and Perry, they avoided the transfer even though the creditor didn't have a security interest in it. And the same in Husky as well. There was no, the creditor didn't have a security interest. Well, Husky certainly provides a path for resolving the 523 question, correct? Correct. When I hear a lawyer then turn to a question of state law and tells a three-judge panel of a federal appeals court that it's a question of first impression, that springs to my mind the same question that my colleague asks and that is, why shouldn't we certify that issue to the Washington Supreme Court? I know it's more expense and additional briefing and all of that, but we are not a common law court and we should not be in the business of interpreting Washington statutes. That's why you have Washington courts. No, I agree with you in that sense, but I would say because the UFTA is a Texas law, you have at least a reasonable basis to assume that Washington would follow the U.S. Supreme Court in interpreting UFTA that way. And considering the egregiousness of the fraud in this case, it doesn't seem like it's a close call. And it protects that policy, which is why I read that quote from McClellan. I mean, if you try to create a red line rule, that's what fraudsters do. They sit around and figure out ways to beat them. Well, we don't have to submit cases. You know, we don't have to, but it's sometimes the prudent thing to do, especially if it really isn't any good case law by the Washington courts or by the state courts. No, I agree that you could. I think you do have enough protection here. I do think that the Supreme Court . . . Similar uniformity. And we could fairly predict that the Washington Supreme Court would follow those decisions. Well, as I said, there are intermediate appellate court decisions that point out that UFTA is there to prevent fraud and that fraud follows this amorphous, ingenious route. And so the court should look at that process, or not process, but those facts, in deciding those cases. And so in that sense, this case fits that pattern. But to the technical point, has there ever been a case in Washington that decides this technical point? No. But does that mean you have to certify it? I don't think you have to certify it. I think it's clearly a discretionary rule, and what we do should depend on our comfort level in predicting what we think the state law is. Right. And I would point out, to the extent that the district court did cite that, you know, normally the shareholders of a corporation are not personally liable for the debts of the corporation, I'm pretty sure we could find a case from all 50 states that say that. That's not an unusual proposition of law by any means. And so I don't think there's a conflict in that sense. Like, why Washington would never ever do this. That's not true. So the fact that other states have done it, and that they've done it in these other cases that we've cited, should give you the protection that you would need. I'd point out a few other decisions in that context. I mean, it sounds like you're well familiar with them, but for example, in IFS, which is the Fifth Circuit case, if you recall the account, the bank account was actually held by a bank in Curaçao, and they found that to be property of the debtor, again focusing on the issue of control. In other words, does the debtor control the asset? If the debtor controls the asset, then that's a basis for avoid in that case, avoiding the transfer. But in this case, it would be finding the debt not as chargeable. Counsel, I don't mean to interrupt you, but I'll just ask, did you want to reserve time for a broader argument? Sure, yes. It's really up to you. You can argue it all now, or you can . . . I will. I will, Your Honor. Thank you very much. Okay. I believe it's Mr. Stern for appellees. Good morning, or good afternoon, Your Honor. My name is Mark Stern. I represent Mr. Meyer and his now ex-spouse, Ms. Donovan. I've listened with interest as to what counsel has said. At one point, we were told that we need to draw a hardline rule, and then we were told fraud is amorphous. So I'd like to tell you what I think this case is about and what it's not about. One, the Supreme Court decided Husky. There really isn't any reason to go to the question of whether the debt is dischargeable or not. Judge Overstreet found that the debt was dischargeable on two bases. She found, one, it was non-dischargeable . . . sorry, non-dischargeable on two bases. One, it was a willful and malicious injury under 523A6, because Mr. Meyer signed all of these extensions. And two, she found that the debt was non-dischargeable as the result of a fraudulent conveyance. That was new law at the time. Husky has decided it. The fact is, it's a non-dischargeable debt. We didn't appeal, and there was no reason to appeal because I don't believe that we could have obtained a reversal on the facts over 523A6 ruling. Whether it's also non-dischargeable under 523A2, you only get shot once. So we were dead on appeal. We didn't appeal it. What this case is about is a very simple question, and that is, what was the fruits of the fraudulent transfer that were transferred? If you read the Husky case, they talk about transfers by the debtor. In this case, we have transfers by a third-party corporation. Controlled by the debtor. Controlled by the debtor, but clearly . . . It's a corporation. It's the debtor. Well, as Judge Robart mentioned or found in his opinion on appeal, had D. Z. Bank requested a determination that the corporation should be disregarded, maybe there were facts there to do that. But there's no question that Meyer controlled all these assets, isn't there? It's hard to fathom that not being the case, but that's not the case . . . But you say, yes, he controlled all these assets. I have to admit it. Yeah, he controlled them. Mr. Meyer is a very forceful person, and yes. But that's not what we have here. Had D. Z. Bank come in and said, Your Honor, I want to pierce the corporate veil, probably would have gotten it. But D. Z. Bank did not approach or ask that anywhere in this proceeding. It still hasn't requested a piercing of the corporate veil before you today in the Ninth Circuit. They just make this argument, well, he controlled it, so therefore . . . And in Washington, the court asked, and I've got the site, it's in the brief, it's on page 15 of Judge Robart's order, corporations' assets are separate from the assets of the shareholders. They have different creditors. We don't know, and it's not in the record, what creditors Meyer's insurance had. Probably there were some. But what we have here is a transfer of assets by a third party, not the debtor, granted controlled by the debtor, but by a third party to a new corporation. And then we look at what was transferred. Judge Overstreet went through this at length. She decided, and then she reconsidered and decided, and Judge Overstreet was a very careful judge. She decided that the bank could trace $123,500, and I think I've got that number close, of assets that at one point was part of the original company and that had been, you could trace this amount to the corporation that got transferred. And that when the Brook mess blew up, and it was a true blow-up, insurance companies couldn't write policies, they couldn't deal with clients, they couldn't pay, they didn't get paid. To say that it was a small thing, it was an atom bomb in the insurance industry world, within the United States. Banks went out of business. Fraudulent conveyance actions by the Brook trustee are still coming down. One came down yesterday or two days ago. But he was able to go out and build up some more business, and that's this $200,000-some dollars worth of business that he was able to generate, not from Brook, not from stuff that was the subject of the bank's collateral, but by Mr. Myers going out and knocking on doors and saying, I'd like to sell you insurance. And then it all got transferred. The court ruled, you got $125,000 worth of collateral. That's a fraudulent conveyance. It was transferred, and we'll give you a judgment for the $125,000, because you had an interest in that. The fact that the corporation had some other stuff that you didn't have an interest in is not something that you get to get a judgment for. It's as if you're playing with blocks. Well, at some point along the way, didn't DZ get a judgment against Meyer for over a million? They got a judgment against Mr. and Mrs. Meyer, but they never got a judgment against Meyer Insurance. But they got a judgment against Mr. Meyer and Mrs. Meyer for over a million. Yeah. Yeah, and we could talk at length about it. I mean, they have a judgment there, and it's in bankruptcy and whatnot. But they're trying to protect their assets. Well, they're trying to do lots of things. Well, they're trying to protect their assets. Of course. That's what bankruptcy lawyers do. I didn't file this bankruptcy. I took it over after they got sued. But the fact of the matter is that they're trying to protect their assets. But the fact of the matter also is that DZ Bank is a- And they're trying to protect them from DZ Bank. And DZ Bank is a very sophisticated international bank that set up this whole thing with Brook and got defrauded by Brook in major ways and then was left with a mess that Mr. Meyer had only bought his interest in from Brook within 30 or 40 days of when the whole thing cratered. He didn't have a chance to really screw it up. He just bought the thing. And all of a sudden, he wasn't getting his commissions. And he was trying to just keep his house and home together. And that's what everyone was doing. But whether they could have gotten a judgment against Meyer and then gone and levied on the stock and then gotten somehow to get the assets of Meyer Insurance is not something that's before the court. The bank never sought that. And what it seeks to do here today is get relief it didn't ask for. In Washington, the assets of corporations are separate from the assets of shareholders. In Washington, the creditors of the corporation are separate from the creditors of the shareholders. And if you're going to pursue the shareholder, you don't get to pursue the assets of the corporation unless you can pierce the corporate veil. Thank you, Judge Gould. I'm becoming a little bit elderly. But we've extended our argument a long time today. I don't really have much else. Can I ask you one question? Certainly. Could you please give me your view on whether there's any issue here that deserves to be certified to the state Supreme Court? I don't think so. But if I were going to pick one, I guess. No, Your Honor. I don't see an issue that's... I mean, the only issue I can think of is a transfer by a corporation fraudulent on the creditors of its shareholder. And I don't think that there's a case one way or the other on that. I know Judge Robart said that he didn't find one. In his opinion, I certainly haven't found one. Counsel hasn't submitted one. But I don't think it's... I think Judge Robart and Judge Overstreet did a particularly good job of determining what the law is. And I think that the decision by Judge Robart is well-written, well-researched, and ought to be sustained. And I thank you very much. Are there any other questions or anything? Any questions from Judge Pines or Judge Hawkins now? Thank you. Thank you, Mr. Stern. So, Mr. Jarcy. A couple quick points. Counsel mentions that we never requested a finding that the veil should be pierced. But we did prove, I think definitively, that the transaction was a sham. And I think we are in federal court and the issues were presented with consent. They never objected to that testimony and never objected to how we presented that argument. And we split out very carefully our damages in our trial brief. I don't know if you got a chance to see it, but we said very clearly that the A6 claim was related to the 123. And the 385 was the A2A claim for including assets that were unencumbered. And so that was very much tried by consent. And so this notion that we somehow had to seek a very specific finding, that the veil was pierced when the whole purpose of the case was to show that the transfers were a sham, seemed a little too formulaic and not embodied by the federal rules. The only problem is your argument before us is that's not the theory that you're arguing. I'm sorry? That's not your theory. Correct. No, I'm with you. I'm just pointing that out. I understood, but that's not your theory. And then within the statute itself, I note that WFTA, if there's maybe a better way to say that, that property means anything that may be the subject of ownership. And then the transfer means every mode, direct or indirect, absolute or conditional, voluntary or involuntary of disposing or parting with an asset or an interest in an asset. And so I think the idea of taking all the underlying assets and depleting them so that your creditors can't actually attach your ownership interest qualifies as an unlawful transfer under the statute. And I ask that you reverse and enter judgment for the full amount in favor of DZ Bank. Thank you very much. Thank you, counsel. I'd like to thank counsel on both sides for their excellent arguments. The case of DZ Bank 1535086 shall now be submitted. And the court is adjourned for the day.
judges: Hawkins, Gould, Paez